This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**IN THE MATTER OF LOUISIANA ENERGY SERVICES, LP APPLICATION FOR A DISCHARGE PERMIT (DP-1481) FOR THE NATIONAL ENRICHMENT FACILITY.**

**CITIZENS FOR ALTERNATIVES TO RADIOACTIVE DUMPING,**

    Petitioner-Appellant,

v.                                          **NO. 28,663**

**LOUISIANA ENERGY SERVICES, LP, NEW MEXICO ENVIRONMENT DEPARTMENT, and WATER QUALITY CONTROL COMMISSION,**

    Respondents-Appellees.

**ADMINISTRATIVE APPEAL FROM THE WATER QUALITY CONTROL COMMISSION**

Gary K. King, Attorney General
Stephen A. Vigil, Assistant Attorney General
Santa Fe, NM

for Appellee Water Quality Control Commission
Office of General Counsel

New Mexico Environment Department
Tannis L. Fox, Deputy General Counsel/Special Assistant Attorney General
Santa Fe, NM

for Appellee New Mexico Environment Department
Montgomery & Andrews, PA
Louis W. Rose
Jeffrey J. Wechsler
Sharon T. Shaheen
Santa Fe, NM

for Appellee Louisiana Energy Services, LP

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Citizens for Alternatives to Radioactive Dumping (CARD) appeals from a final order sustaining the issuance of a ground water discharge permit to Louisiana Energy Services, LP (LES). The New Mexico Environment Department (Department) issued the permit pursuant to the New Mexico Water Quality Act, NMSA 1978, §§ 74-6-1 to -17 (1967, as amended through 2009) (WQA), and the WQA's regulations governing ground and surface water protection, *see* 20.6.2 NMAC (2001). CARD sought review from the New Mexico Water Quality Control Commission

(Commission), which sustained the Department's action. *See* § 74-6-5(O), (Q). CARD appeals the Commission's order pursuant to Section 74-6-7, raising three arguments: (1) the Department's hearing officer failed to give due weight to CARD's expert testimony; (2) the Commission violated CARD's procedural rights at the review by not providing proper notice and by allowing additional expert testimony; and (3) the LES site was not adequately characterized under the regulations. We affirm.

**BACKGROUND**

LES submitted an application for a discharge permit to the Department on April 28, 2004, for its uranium enrichment facility near Eunice, New Mexico. *See* 20.6.2.3104 NMAC (requiring that any person proposing to discharge effluent or leachate so that it may move directly or indirectly into ground water must have a discharge permit). The application sought to discharge storm water and effluent into three ponds and to discharge domestic waste water from a treatment facility into leach fields. For the next two years, LES submitted additional information to the Department. On June 28, 2006, the Department issued a draft permit, which was subsequently revised in response to public comment.

On January 29, 2007, the Department held a public hearing in Eunice on the proposed discharge permit. *See* § 74-6-5(G) (providing that "[n]o ruling shall be

3

made on any application for a permit without opportunity for a public hearing at which all interested persons shall be given a reasonable chance to submit evidence, data, views or arguments orally or in writing and to examine witnesses testifying at the hearing"). At the hearing, approximately twenty-four members of the public testified, mostly in support of the permit. LES and the Department presented technical testimony from five witnesses in support of the permit. CARD presented technical testimony from Dr. Richard Phillips, a private consultant, opposing the permit.

Dr. Phillips testified that he had a Ph.D. in geomorphology and that CARD had retained him seventeen days earlier to investigate the ground water hydrology in the immediate vicinity of the LES site. CARD submitted a paper Dr. Phillips co-authored about karst aquifers at the Waste Isolation Pilot Plant (WIPP) site, which is sixty to seventy miles from the LES site. Based on a field investigation he conducted north of the LES site, Dr. Phillips concluded that the LES site was in a karst region. According to CARD, "[k]arst topography is a landscape shaped by the dissolution of a layer or layers of soluble bedrock, usually carbonate rock such as limestone or dolomite. Ground water in karst areas is just as easily polluted as surface streams." Dr. Phillips' field investigation focused on two features, a structural depression that holds water ephemerally, and Baker Spring, which holds water perennially. Dr. Phillips said that the depression and Baker Spring were "telltale features of a karst

4

terrain." Thus, his testimony about karst, caliche, and capstone was intended to suggest "that karstic formations near the LES site would likely be affected by runoff from the site" if the Department issued the permit. Dr. Phillips acknowledged that he had only spent one day in the field and had not visited the LES site.

In rebuttal, the technical witnesses for LES and the Department challenged Dr. Phillips' characterization of the area north of the site, suggesting that there was evidence that Baker Spring was a former sand and gravel site, and that some of its karst-like features such as caves could have been caused by human activity. The witnesses stated that there was no evidence of karst at the LES site, no evidence that Baker Spring was related to the site, and no evidence that the presence of karst would matter given the geology and hydrology of the LES site and the operating procedures and protections provided in the permit.

In addition to evidence from the public hearing, the record before the Department included detailed information regarding the geology and hydrology at the LES site. LES submitted an environmental report and an environmental impact statement that were prepared as part of the licensing process for the Nuclear Regulatory Commission. The application also included the results from a site investigation, which involved drilling nine shallow bore holes, five geotechnical bore holes, and three ground water monitoring wells. In addition, data was reviewed from

investigations of sites in close proximity to the LES site, including the Waste Control Specialists (WCS) site, the former Atomic Vapor Laser Isotope Separation (AVLIS) site, and the Lea County Municipal Landfill.  More than 300 bore holes were drilled on the combined properties, which allowed LES to assess the hydrogeologic conditions of the region in conjunction with the specific investigation of the LES site.

According to evidence presented by LES, there are no surface water bodies or surface drainage features at the LES site and potential ground water resources beneath it are limited.  The site is not located within the recharge area of any sole source or major aquifer.  Due to low rainfall and high evapotranspiration, the shallow alluvial soils that exist in the uppermost layer below ground are dry with little or no recharge to ground water taking place beneath the site.  Any water in the shallow alluvial material would flow northeast to southwest.  Under the upper layer, twenty-three to fifty-five feet below ground, the Chinle red beds form a clay unit that is more than 1,000-feet thick.  The red beds are highly impermeable to water, preventing its downward migration.  Ground water was first encountered about 214 to 222 feet below ground in the red beds.  The water was found in only one of the three monitoring wells and is likely contained at that level in the red beds.  The first well-defined aquifer is approximately 1,115 feet below the LES site.

To ensure compliance with the regulations, the discharge permit contains

6

multiple protections against ground water contamination. The permit requirements include design and construction specifications for the ponds and wastewater treatment system, synthetic lining for the storm water pond, double synthetic lining and a leak detection system for the effluent pond, regular sampling and reporting of water and soil, installation of nine monitoring wells, regular inspections, and contingency and closure plans.

The hearing officer issued a fifty-page report that summarized the evidence from the public hearing and the record and made detailed findings on the site characterization and the operational requirements of the permit. The hearing officer concluded that the discharge permit met all the requirements of the WQA and its regulations and that issuance of the permit would not result in concentrations in excess of ground water quality standards or the presence of any toxic pollutant at any place of withdrawal. The hearing officer recommended issuing the permit. The Secretary of the Department adopted the hearing officer's report and issued a final order.

CARD filed a petition seeking review of the permit with the Commission, pursuant to Section 74-6-5(O). On April 10, 2007, Janet Greenwald appeared at the Commission's meeting prepared to present argument on CARD's petition for review. Greenwald was told that the matter was on the agenda only to set a date for review. Greenwald told the Commission that she wanted to present additional evidence about

Dr. Phillips' qualifications.

In 2005, Section 74-6-5 was amended to provide for record review of the Department's decision rather than de novo review. *See id.* (commenting on 2005 amendment in history section). Because the Commission had not yet promulgated regulations providing detailed procedures for review of a petition under the new legislation, the Commission engaged in a lengthy discussion with the parties about the procedures that should be followed. Greenwald agreed to waive the 90-day requirement for a review if she could supplement the record with material relating to Dr. Phillips' qualifications.

The Commission subsequently remanded the case to allow the Secretary to accept and consider CARD's supplemental materials. The order for limited remand directed CARD to file a supplemental petition for review if it sought to raise additional issues. After reviewing CARD's supplemental evidence, the hearing officer entered a supplemental report stating that she would not make any changes to her original report. She again recommended issuing the permit. The Secretary agreed and issued a final order adopting the hearing officer's recommendations.

CARD filed a supplemental petition for review. After filing briefs, the parties were notified that deliberations on CARD's request for review were scheduled for the Commission's meeting on March 11, 2008. Greenwald appeared at the review. The

parties agreed to summarize their positions orally. The Commission deliberated and sustained the permitting process. This appeal followed.

**DISCUSSION**

Under the WQA, this Court can set aside the Commission's order only if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Section 74-6-7(B)(1)-(3); *Phelps Dodge Tyrone, Inc. v. N.M. Water Quality Control Comm'n*, 2006-NMCA-115, ¶ 10, 140 N.M. 464, 143 P.3d 502.

"An action is arbitrary or capricious if it is unreasonable, irrational, wilful, and does not result from a sifting process or if there is no rational connection between the facts found and the choices made." *Phelps Dodge Tyrone, Inc.*, 2006-NMCA-115, ¶ 10 (internal quotation marks and citation omitted). "With respect to questions of fact, we look to the whole record to determine whether substantial evidence supports the [c]ommission's decision." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 24, 142 N.M. 533, 168 P.3d 105. "Substantial evidence is evidence that a reasonable mind would recognize as adequate to support the conclusions reached by a fact-finder." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 30, 141 N.M. 41, 150 P.3d 991 (filed 2006). We view the evidence in the light most favorable to the Commission's decision and

9

do not reweigh the evidence. *See id.* A decision is not in accordance with law when "the agency unreasonably or unlawfully misinterprets or misapplies the law." *Id*. ¶ 11 (internal quotation marks and citation omitted). Interpretation of a statute is a matter of law that is reviewed de novo; however, we generally defer to an agency's interpretation of its own rules, regulations, and standards. *Id.*

**I.      Expert Testimony**

CARD contends that it was denied a fair and impartial proceeding because the Department's hearing officer failed to give due weight to the expert testimony of Dr. Phillips. CARD contends that the hearing officer's erroneous decision to disregard Dr. Phillips' testimony, and the Commission's decision to sustain that position, prejudiced CARD and violated its rights to due process.

**A.      Dr. Phillips' Qualifications**

We first address CARD's contention that the hearing officer improperly excluded Dr. Phillips' testimony based on an erroneous determination that he was not qualified to give technical testimony on the hydrology and geology of the LES site. We review this issue for an abuse of discretion. *See State v. Alberico*, 116 N.M. 156, 169-70, 861 P.2d 192, 205-06 (1993). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (filed 1998) (internal

quotation marks and citations omitted).

A hearing officer acts as a gatekeeper to ensure that any testimony or evidence that is admitted is relevant and reliable. *See* 20.1.4.400(B)(1) NMAC (2001). The New Mexico Rules of Evidence may be used for guidance. *See* 20.1.4.100 NMAC (2001). Under the rule governing the admission of expert testimony,

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Rule 11-702 NMRA. Thus, CARD was required to demonstrate that Dr. Phillips was qualified by "knowledge, skill, experience, training or education" to express an opinion on the particular issues before the Department concerning the discharge permit. *Id.*

Prior to the public hearing, CARD submitted a statement of intent to present technical testimony that did not include a summary of Dr. Phillips' testimony, a list of exhibits, or Dr. Phillips' resume, as required by the regulations. When Dr. Phillips began testifying, the Department conducted a voir dire examination to inquire into his qualifications as an expert in hydrology and geology. Dr. Phillips testified that he was qualified because he had a Ph.D. in geomorphology, had written a paper on the geomorphology of the WIPP site, and had testified as an expert at other hearings. Despite the Department's objections to allowing Dr. Phillips to testify as an expert

11

witness, the hearing officer allowed Dr. Phillips to testify at length. The hearing officer also allowed CARD to submit all its exhibits as "an offer of proof" for consideration by the Secretary. In addition, before this case was reviewed, the Commission issued a limited remand to allow CARD to supplement the record with additional material to support Dr. Phillips' qualifications. The hearing officer ultimately concluded that Dr. Phillips was not qualified to present expert testimony on the geology or hydrology of the LES site.

We cannot say that the hearing officer abused her discretion. Dr. Phillips was not able to demonstrate that he was qualified to provide expert testimony on the particular geology and hydrology of the LES site. The hearing officer found that Dr. Phillips had never visited the LES site, but had based his testimony on the physical characteristics of a nearby unrelated site (Baker Spring) and the study of a second unrelated site (the WIPP site), which was sixty miles away. Although CARD asserts that Dr. Phillips' testimony about the adjacent site was relevant because the regulations for the permit application require a survey of land in a one-mile perimeter, our review of the record persuades us that LES presented substantial evidence that the application was complete and that issuing the permit would not result in the contamination of ground water at the LES site or its adjacent areas. Thus, as discussed further below, Dr. Phillips was not able to demonstrate that his investigation

12

of the adjacent site or his study of the WIPP site were relevant to the LES site. Accordingly, we are not persuaded that the hearing officer erred in not giving due weight to Dr. Phillips' technical testimony because it was not relevant. "It is within the sound discretion of the trial judge to determine whether expert testimony is relevant[.]" *State v. Blea*, 101 N.M. 323, 326, 681 P.2d 1100, 1103 (1984).

**B.      Fair and Impartial Hearing**

Moreover, regardless of the hearing officer's determination that Dr. Phillips was not qualified to give technical testimony on the geology and hydrology of the LES site, we are not persuaded that CARD's due process rights were violated because the hearing officer, and in turn the Commission, failed to consider Dr. Phillips' testimony.

Initially, we disagree with CARD's contention that the hearing officer, and in turn the Commission, excluded Dr. Phillips' testimony from consideration. As noted above, the hearing officer allowed Dr. Phillips to testify at length and also allowed CARD to submit all its exhibits. In addition, the Commission allowed CARD to supplement the record with additional material to support Dr. Phillips' qualifications. Thus, Dr. Phillips' testimony and CARD's exhibits and supplemental materials were all in the record for review by the hearing officer, the Secretary, and the Commission.

Next, despite CARD's objections, we are not persuaded that CARD was prejudiced by the hearing officer's determinations with respect to Dr. Phillips'

qualifications. The hearing officer's report indicates that she properly considered Dr. Phillips' testimony in the alternative. The report summarizes Dr. Phillips' testimony, describes CARD's exhibits, and specifically addresses issues raised by CARD at the hearing. The hearing officer found that "[t]he gist of Dr. Phillips' technical testimony was that karst, a permeable material, underlies the LES facility." She found that Dr. Phillips "specifically identified Baker Spring as having caliche and identified it as a 'natural' feature." However, the hearing officer also explained why she was rejecting Dr. Phillips' testimony. The hearing officer found that several other technical witnesses had contradicted Dr. Phillips' testimony about the presence of karst, caliche, and capstone near and at the LES site. The witnesses testified that Baker Spring and its caves may have been the result of human activity and that there was no evidence of karst at the LES site or at any of the nearby sites that had been extensively studied including the WCS site, the former AVLIS site, and the landfill. The witnesses also explained that the area north of the site was irrelevant due to the 1,000-foot-thick red beds under the LES site and the protections in the permit. The hearing officer found that even if the LES facility were located over "protectable water," it was designed to prevent the release of contaminants and to protect ground water. The hearing officer concluded that CARD had not met its burden to present sufficient evidence to overcome the evidence submitted by LES that the permit should be issued. The

14

hearing officer also stated that, despite questions about Dr. Phillips' qualifications and other procedural deficiencies, she allowed Dr. Phillips to testify unimpeded and she accepted CARD's exhibits as part of the record. Although the hearing officer questioned Dr. Phillips' qualifications to provide expert testimony on the geology or hydrology of the LES site, she stated that "even if considered and given due weight," his testimony and CARD's exhibits would not form the basis for denying the permit under the WQA or the regulations.

Upon consideration of CARD's supplemental materials after remand, the hearing officer reiterated that she did not think Dr. Phillips qualified as an expert on the geology and hydrology of the site, but that she had accepted his exhibits and allowed him to testify without limitation in the event the final decision maker disagreed with her as to reliability or relevance. She also noted that regardless of procedural violations and questions about Dr. Phillips' expertise, Dr. Phillips did not offer testimony contradicting the expert hydrologists and hydrogeologists who testified that the discharge permit should be issued.

Contrary to CARD's contentions, the hearing officer's reports indicate that she properly considered Dr. Phillips' testimony and rejected it. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact finder to resolve any conflict in the testimony of the witnesses and to determine where

15

weight and credibility lay).

Because the hearing officer allowed Dr. Phillips to testify at length, accepted CARD's exhibits as part of the record, summarized Dr. Phillips' testimony, and addressed the issues raised by CARD at the hearing, the Commission was able to give due consideration to CARD's position on review. At the review, the commissioners discussed Dr. Phillips' testimony about karst and Baker Spring and explained why they disagreed with it. The commissioners specifically noted that they were addressing Dr. Phillips' testimony regardless of the procedural deficiencies and the questions about his qualifications. The Commission's final order stated that the hearing officer did not impede Dr. Phillips' testimony and that it was able to review his testimony and all of CARD's information and arguments. The Commission reiterated that CARD did not present sufficient evidence to reverse the Department's action in issuing the permit. Under these circumstances, we reject CARD's argument that it was denied a fair and impartial hearing. *See N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 111 N.M. 622, 635-36, 808 P.2d 592, 605-06 (1991) (recognizing that the fact finder in an administrative proceeding must weigh conflicting testimony but is not required to accept the testimony of any particular witness as long as the decision is supported by substantial evidence). The hearing officer and the Commission properly considered Dr. Phillips' testimony, but

concluded that it was not sufficient to deny issuance of the permit.

**II.    Notice**

CARD argues that it was not provided proper notice of the Commission's review of its petition.  CARD contends that the Commission violated Section 74-6-5 by not providing notice by certified mail and by considering expert testimony that was not part of the existing record.

**A.    Adequate Notice**

We first note that the parties dispute which notification procedures apply under the circumstances of this case.  Section 74-6-5(P) provides that when a timely petition for review is made, the Commission shall consider it within ninety days.  In this scenario, "[t]he commission shall notify the petitioner and the applicant or permittee, if other than the petitioner, by certified mail of the date, time and place of the review." *Id.*  Because there is no indication in the record that CARD was notified by certified mail of the date, time, and place of the review, CARD contends that it did not receive adequate notice.

However, LES and the Department contend that the notification procedures in Section 74-6-5(R) apply.  Section 74-6-5(R) provides that

> [p]rior to the date set for review, if a party shows to the satisfaction of the commission that there was no reasonable opportunity to submit comment or evidence on an issue being challenged, the commission shall order that additional comment or evidence be taken by

17

the constituent agency. Based on the additional evidence, the constituent agency may revise the decision and shall promptly file with the commission the additional evidence received and action taken. The commission shall consider the additional evidence within ninety days after receipt of the additional evidence and shall notify the petitioner and the applicant or permittee, if other than the petitioner, of the date, time and place of the review.

Because this case came before the Commission after remand, and upon CARD's supplemental petition for review, LES and the Department contend that Subsection R applies and that notification by certified mail is not required.

For the purposes of this appeal, we do not decide which procedures apply to the circumstances of CARD's request for review. Even if we presume that CARD was entitled to notice by certified mail, we are persuaded that CARD had actual notice of the review and was not prejudiced by any procedural defect.

According to the supplemental record proper, CARD received electronic notification that deliberations concerning its request for review were scheduled for the Commission's meeting on March 11, 2008. CARD does not dispute that it received an e-mail notifying it of the meeting. As Greenwald appeared at the review, it appears that CARD received actual notice of the date, time, and place of the review. CARD argues, however, that because it did not receive the notice required by Section 74-6-5(P), it was not prepared to offer an official closing statement at the review.

CARD does not explain how notice by certified mail would have made a

18

difference in its ability to prepare for oral arguments. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (observing that we do not review unclear or undeveloped arguments which require us to guess at what the parties' arguments might be). Neither Subsection P nor R requires notification of anything but the date, time, and place of the review. Thus, we are not persuaded that the notice that was provided failed to comply with the statutory requirements in that CARD received actual notice of the date, time, and place of review. *See Bennett v. City Council*, 1999-NMCA-015, ¶¶ 7-9, 126 N.M. 619, 973 P.2d 871 (filed 1998) (holding that the city council substantially complied with notice requirements when the affected parties had actual notice of a hearing).

Furthermore, we are not persuaded that CARD was prejudiced in its ability to present its arguments. Section 74-6-5 does not specifically provide for oral arguments. Instead, the statute provides that "[t]he commission shall review the record compiled before the constituent agency, including the transcript of any public hearing held on the application or draft permit, and shall allow any party to submit arguments." Section 74-6-5(Q). Here, the order of limited remand designated a briefing schedule and the parties submitted written briefs prior to the review. At the review, the Commission chair asked the parties if they wanted to give oral statements. Greenwald noted that she was not quite sure what oral argument entailed, but agreed

19

that the parties should be allowed to summarize their positions. She did not object to the procedures, ask for more time, or indicate that she was not prepared. Greenwald spoke for several minutes and outlined CARD's position as presented in its briefs to the Commission. Our review of the record does not indicate that Greenwald was unprepared for the oral statements. CARD also does not explain why more time would have made a difference.

In addition, the scope of the Commission's review was based on the record, which included the written briefs. By allowing the parties to make oral statements, the Commission clearly sought to provide the parties with every opportunity to participate. If CARD was concerned about the procedures, it should have made those concerns known. We are not persuaded that CARD was prejudiced by the procedures that were followed. CARD had actual notice of the hearing and was allowed to participate by submitting briefs and an oral statement. CARD failed to demonstrate how the fact that it did not receive notice by certified mail and the fact that it was not notified in advance that it would be allowed to present oral statements prejudiced it. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (stating that "[a]n assertion of prejudice is not a showing of prejudice"); *see also State v. Jose S.*, 2007-NMCA-146, ¶ 20, 142 N.M. 829, 171 P.3d 768 (stating that "[in] the absence of prejudice, there is no reversible error"), *cert. quashed*, 2008-NMCERT-

004, 144 N.M. 49, 183 P.3d 934.

**B.      Commissioner's Statements During Deliberations**

CARD also contends that it did not receive notice that the Commission would bring in its own karst expert to testify at the review. CARD claims that the Commission took new testimony from the expert regarding the sufficiency of the evidence without allowing the parties to cross-examine the witness. CARD argues that the Commission's use of its own expert witness violated the statutory requirement that it "consider and weigh only the evidence contained in the record," *see* § 74-6-5(Q), and created a strong appearance of bias in the proceedings. As a result, CARD contends it was denied due process.

We review due process claims de novo. *See Phelps Dodge Tyrone, Inc.*, 2006-NMCA-115, ¶ 40. "At a minimum, a fair and impartial tribunal requires that the trier of fact be disinterested and free from any form of bias or predisposition regarding the outcome of the case." *Id.* (internal quotation marks and citation omitted).

We disagree with CARD's characterization of the proceedings. The Commission did not bring in an expert witness to testify. Rather, after allowing oral statements by the parties, the Commission began deliberation. The chair asked Peggy Johnson, the commissioner representing the Bureau of Geology and Mineral Resources, to comment. Commissioner Johnson noted that she spent a lot of time

reviewing the case and was able to do a technical review based on the information presented by all the parties. Based on her review of the evidence, and her general knowledge of karst formations and the area, she did not think that CARD presented enough information that the LES site was in a karst area. She stated that she thought the LES site was a geologically sound location and, thus, a good site for the facility. Afterwards, other commissioners commented on the evidence, explained why they did not find CARD's evidence persuasive, and stated their opinions.

We do not agree with CARD's claim that Commissioner Johnson's comments constituted new evidence in violation of Section 74-6-5(Q). By statute the Commission is composed of designees from various state agencies and the public. *See* § 74-6-3(A). Our cases have recognized that "[t]his serves the purpose of having expertise on the [c]ommission which deals with highly technical and complicated matters." *Kerr-McGee Nuclear Corp. v. N.M. Water Quality Control Comm'n*, 98 N.M. 240, 246, 647 P.2d 873, 879 (Ct. App. 1982). Commissioners are entitled to use their knowledge and expertise to address the technical issues before them. *See Phelps Dodge Tyrone, Inc.*, 2006-NMCA-115, ¶ 50. Indeed, "[c]ommissioners are appointed because of their knowledge and expertise." *Id.*

Although CARD makes a general assertion that Commissioner Johnson's comments constituted expert opinion, CARD does not provide any specific examples

of how Commissioner Johnson's statements constituted new evidence. *See Headley*, 2005-NMCA-045, ¶ 15 (observing that we do not review unclear or undeveloped arguments which require us to guess at what the parties' arguments might be). The record clearly indicates that Commissioner Johnson reviewed various pleadings, reports, maps, and testimony in reaching her conclusion. The record also clearly indicates that Commissioner Johnson relied on her general knowledge and technical expertise rather than any specific facts that were not in the record to arrive at her opinion. *Cf. State v. Mann*, 2002-NMSC-001, ¶ 32, 131 N.M. 459, 39 P.3d 124 ("A juror's common sense and experience, including expertise in particular subjects, is not extrinsic information warranting relief if used during deliberation." (internal quotation marks and citation omitted)). Thus, we are not persuaded that CARD has made a sufficient showing that the Commissioner's participation was improper or denied CARD due process. In light of the fact that the Legislature has seen fit to have representatives with expertise in technical matters on the Commission, we decline to hold that a commissioner's discussion of her views of the evidence in light of her experience and expertise constitutes new evidence. Rather, in our view, Commissioner Johnson's statements constitute proper deliberations based on her technical expertise and her review of the evidence.

We further reject CARD's claim that Commissioner Johnson's participation in

the review was improper because it created the indication of possible bias. As already noted, the statutory scheme envisions reliance on technical expertise. Here, the Commission sought discussion on the evidence from one of its members as part of the review process. CARD gives us no basis for concluding that Commissioner Johnson was biased or predisposed to the outcome of the case or that the appearance of bias was created by the chair asking for her opinion. *Cf. Reid v. N.M. Bd. of Exam'rs in Optometry*, 92 N.M. 414, 415-16, 589 P.2d 198, 199-200 (1979) (finding that a board member's statement that a licensee would lose his license before hearing any evidence or testimony demonstrated that the board member prejudged the case); *Erica, Inc. v. N.M. Regulation & Licensing Dep't*, 2008-NMCA-065, ¶ 43, 144 N.M. 132, 184 P.3d 444 (rejecting a claim that a hearing officer was biased based on pre-hearing rulings that went against the appellant because there was no demonstration that the hearing officer prejudged the case).

Our review of the record gives us every reason to believe that Commissioner Johnson carefully considered the evidence in the record, including the evidence presented by CARD, and rejected CARD's position. Moreover, the record indicates that other members of the Commission also reviewed the whole record and reached their own conclusions. We therefore hold that there was no violation of due process.

**III.    Characterization of LES Site**

24

CARD argues that the discharge permit should have been denied because it was incomplete. CARD contends that LES failed to provide a complete and thorough accounting of the water sources and drainage information required under the regulations. LES and the Department respond that substantial evidence supports the finding that the application was correct and in compliance with all applicable regulations.

Under 20.6.2.3106(C)(2) NMAC, LES was required to provide information on the "[l]ocation of the discharge and of any bodies of water, watercourses, and ground water discharge sites within one mile of the outside perimeter of the discharge site." CARD contends that LES did not comply with this regulation with respect to Baker Spring because LES merely attached a map that referenced it. CARD argues that this passing reference is not enough.

We disagree. Instead of requiring detailed information, the plain language of 20.6.2.3106(C)(2) NMAC requires an applicant for a discharge permit to identify the location of any bodies of water within one mile of the perimeter of the discharge site. LES complied with that regulation on the application by referring to attachments that identified Baker Spring. LES also discussed Baker Spring in the EIS statement and the environmental report.

The hearing officer found that the application was complete and provided all

of the information required by the regulations. Although CARD asserts that LES did not adequately investigate the area north of the LES site, including Baker Spring, substantial evidence supports the hearing officer's finding that the LES site was adequately characterized and that Baker Spring was not relevant to the LES site. LES and the Department presented evidence that Baker Spring lies 2,000 feet northeast of the LES site and that Dr. Phillips' testimony about karst formations, caliche and caprock at Baker Spring was contradicted by other technical witnesses and other evidence. Based on this evidence, even if karst existed at Baker Spring, it would make no difference due to the 1,000-foot impermeable red bed underlying the LES site, the lack of evidence that ground and surface water would flow to Baker Spring from the LES site, and the permit's protections against ground water contamination in the facility's design, operating procedures, and contingency plans.

CARD had the burden of presenting an affirmative case that the karst formations, caliche, and caprock discussed by Dr. Phillips would result in a violation of the Commission's requirements for issuance of the discharge permit. *See* 20.1.4.400(A)(1) NMAC. CARD did not carry its burden.

**CONCLUSION**

We affirm.

**IT IS SO ORDERED.**

26

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**